CASES 40, 41—PETITIONS ORDINARY—OCTOBER 23.

## Robinson, &c. v. Webb—Same v. Speed.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. THE OWNER IS LIABLE FOR THE NEGLIGENT USE OF HIS PROPERTY, real or personal, by himself or servants, resulting in injury to others.

But the owner of real estate is not liable for injuries resulting from its nature, condition, or use, upon any different principle or to any greater extent than the owner of personalty.

2. THE ONLY BASIS OF RESPONSIBILITY OF ONE FOR THE NEGLECT OF ANOTHER IS THE RELATION OF MASTER AND SERVANT, the former being responsible for the acts of the latter; and to incur the responsibility the master must not only have the power to select the servant or agent, but to direct the mode of executing the work, and to so

control him in his acts in the course of the employment as to prevent injury to others.

3. A CONTRACTOR TO BUILD A HOUSE is not the servant of the lot-owner, and is liable for injuries caused by his neglect or by the neglect of his servants.

The owner of a lot of ground contracted with a builder that the latter, furnishing all the materials and labor, should erect thereon a building for a fixed price, to be done under the supervision of an architect, who, in the event the work should be delayed, was authorized to employ another builder, and without his consent the builder was not to sublet any of the work. *Held*, that it was an independent employment, in which the relation of master and servant, superior and subordinate, between the contracting parties, did not exist.

4. *Where the relation of independent contractor exists* as to the use of real property, and the party employed is skilled in the performance of the duty he undertakes, and the thing directed to be done is not in itself a nuisance nor will necessarily result in a nuisance if proper precautionary measures are used, the injury resulting not from the fact that the work is done, but from the negligent manner of doing it by the contractor or his servants, the owner can not be made to respond in damages.

5. *He is to be deemed the master who has the superior choice, control, and direction of the servant,* and whose will the servant represents, not merely in the ultimate result of his work, but in all its details. (Shearman & Redfield on Negligence, 83.)

6. IF AN INJURY IS CAUSED BY THE NEGLIGENT ACT OF AN AGENT done in the course of his employment, the master is liable, even if he did not authorize or know of the servant's act or neglect, or even disapproved or forbade it. (14 Howard, S. C. 486; Story on Agency, 452.)

7. AGENT IN POSSESSION OF GOODS MAY SUE FOR DAMAGE THERETO.— One having the goods of another in his possession to sell on commission can maintain an action for any damage done to them while so in his possession.

MUIR, BIJUR & DAVIE,  }
                       }  . . . . . . For Appellants,
BODLEY & SIMRALL,  . }

CITED

Shear. & Red. on Negligence, secs. 60, 63, 64, 76, 82, 496, 42.
Story on Agency, sec. 453.
2 Hilliard on Torts, 436, 446.
2 Greenleaf's Evidence, 232, *b*.
5 Gillen, 509, Armstrong v. Conley.

VOL. XI.—31

5 Gillen, 425, Johnston v. Barbour.
4 B. & Ald. 590, Craft v. Allison.
2 Robertson, N. Y. 307, Beamish v. Hoyt.
2 Robertson, N. Y. 303, Seabrook v. Hecker.
8 Cal. 489, etc., Boswell v. Laird.
4 Selden, 222, Pack v. Mayor of New York.
1 Kernan, 432, 435, Kelly v. Mayor of New York.
7 Bosworth, 513, O'Rourke v. Hart.
9 Mees. & Wels. Ex. 710, Rapson v. Cubett.
4 Exch. 244, 257, Reedie v. Railway Co.
5 Exch. 721, Knight v. Fox.
4 Exch. 257, Hebert v. London & Northwestern R. R. Co.
2 Black, 424, etc., City of Chicago v. Robbins.
2 Duvall, 139, Matheny v. Wolffs.
1 Selden, Blake v. Ferris.
1 P. F. Smith, 475, Hunt v. Pennsylvania R. R. Co.
2 Hilliard on Torts, pp. 436, 446.
4 Bos. 148, Potter v. Seymour.
1 B. Mon. 96, Ferguson v. Terry.
12 Allen, 56, Howe v. Wemarch.
19 Wend. 347, Wright v. Wilcox.
24 Conn. 40, Thames St. Co. v. Housatonic Co.
30 How. Pr. 315, Garoy v. Donn.
26 Ind. 72, Evansville Railroad Company v. Bauer.
16 B. Mon. 582, Kountz v. Brown.
45 Ill. 455, Schwartz v. Gilmore.
30 Mo. 207, Deford v. State.
50 N. Y. 639, Brooks v. Curtis.
38 Cal. 691, De Pratt v. Lick.
17 N. Y. 204, Storrs v. City of Utica.
36 Barb. 288, Benedict v. Marlin.
21 Iowa, 578, Kellogg v. Payne.
14 Minn. 43, Shell v. Second National Bank.
12 Am. Law Reg. O. S. 354, Pointer v. City of Pittsburg.
57 Pa. 374, 382, etc., Allen v. Willard.
35 N. J. 17, Cuff v. Newark & New York Railroad Company.
73 Eng. Com. Law, 867, Overton & Freeman.
16 Eng. Com. Law and Eq. 443, Peachy v. Rowland.
32 Law Jour. Rep., part 8, N. S., Gray v. Hubble.
27 Conn. 280, Corbin v. The American Mills.
59 Me. 520, Eaton v. European & N. Amer. R. W. Co.
17 Mo. Barry v. City of St. Louis.
25 Ill. 438, Scammon v. Chicago.

14 Maine, 96, Grigg v. Fleckenstine.
104 Mass. 140, Mayor v. Railroad Company.

JAMES SPEED, . . . . . . .
JOHN ROBERTS, . . . . . . .
BARR, GOODLOE & HUMPHREY, } . . . . . For Appellees,
WM. F. BARRET, . . . . .
ST. JOHN BOYLE, . . . . .

CITED

3 Law Rep. (Eng. & I. Appeal Cases), 340, Ryland v. Fletcher.
2 Black. 427, Chicago v. Robbins.
3 Gray, 349, Hilliard v. Richardson.
1 Chitty's Pleadings, side page 151.
2 Duvall, 138, Matheny v. Wolffs.
6 Exch. 499, Hale v. Railway Company.
15 Com. B. 515 (N. S. 376), Baird v. Williams.
30 Md. 204, Deford v. The State, &c.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Robinson and Pettet, two of the appellants in this case, holding the title to a lot of ground in the city of Louisville as trustees under the will of Wm. F. Pettet, deceased, one of the trustees, Charles Pettet, the other concurring, on the 9th of July, 1872, entered into a written contract with John Hehl to erect a building on this lot in accordance with the specifications and drawings made by John Andrewartha, an architect. This contract reads:

" This contract made and entered into this 9th day of July, 1872, by and between Charles H. Pettet, trustee of the estate of W. F. Pettet, deceased, as party of the first part, and John Hehl, builder, as party of the second part:

"*Witnesseth*, That the party of the second part agrees and hereby binds himself to execute and finish complete, in accordance with the drawings and specifications made by John Andrewartha, architect, and signed for identification, a four-story business house on Market, between Third and Fourth streets,

on lot belonging to party of the first part, for and in consideration of the sum of twenty thousand and one hundred and twenty dollars. The party of the second part further agrees to furnish all the materials, and also such scaffolding, building stock, tools, and appliances and *labor* necessary to finish and entirely complete the aforesaid store in accordance with the true intent and meaning of the drawings and specifications. The work shall be pushed to completion as rapidly as practicable, without risk of good work or durability, and shall be finished complete on or before the 30th day of November, 1872, under a penalty of liquidated damages to be ascertained by the architect or whom he may appoint. Such damages to be retained out of any sum the builder may have due him at the completion of the work. In the event of any unnecessary delay the architect shall have full power, with the consent of the party of the first part, to appoint other parties to complete the work; and such expenses so incurred shall be deducted out of any sum the builder may have due him, or recovered from him by the process of law, the architect being sole judge of what constitutes delay. No change of plan or specification shall violate or vitiate this contract; but the value of such changes or omissions shall be ascertained by the architect alone, or whom he may appoint, and the amount so ascertained shall be added to or deducted from this contract, as the case may be; and in no event will any work be considered extra under this contract except the same shall be ordered in writing by the architect, and the value ascertained by him and indorsed as part of this agreement, all such valuations being based on the basis of the builder's price in framing this proposition.

"It is further mutually agreed that the architect, John Andrewartha, shall superintend the work, and give such instructions from time to time during the progress *as the necessities of the work demand,* either verbally, in writing, personally, or by proxy; but in no event will any work be considered as ac-

cepted before the inspection (after the completion of the work by the builder) to be made by the architect, and any work then ascertained to be inferior will be deducted for, and liquidated damages assessed against the builder.

"The builder shall be responsible for all accidents that may happen during the progress of the work, and shall make good all damages or inferior work, by compensation or renewal, before receiving a final settlement.

"The work shall not be sublet without the approval of the architect of the party offered by the builder to do the work, and in all cases of subletting the builder or party of the second part shall be treated with and held responsible for any inferior work done by any sub-contractor, though he may have been accepted by the architect to do the work, and the deduction for such inferior work shall be charged against the party of the second part.

"In consideration of the faithful performance of the foregoing terms of this agreement by the party of the second part, the party of the first part agrees and hereby binds himself to pay to the said party of the second part the sum of $20,120.00 for the aforesaid store, under the following conditions:

"Payments to be made by installments, payable on the architect's order, as the work progresses to the amount of seventy-five per centum, the balance to be paid in equal sums on negotiable notes, bearing the date of the completion of the building, and due one at ninety, the other at one hundred and twenty days from that date, with bankable rate of interest."

(Signed)    Charles H. Pettet, *Trustee.*

John Hehl.

By virtue of this contract Hehl, the builder, with his employees, entered upon the lot and undertook the erection of the building, and whilst progressing with the work one of the walls that was being constructed fell upon an adjoining build-

ing occupied by the appellee Webb, as tenant, and used by him as a retail book and stationery store, destroying many of his books and injuring other articles of merchandise kept by him for sale. Webb instituted the present action against Robinson and Pettet as the owners of the lot, and against John Hehl, John Andrewartha, Lawrence Diehlman, and Joseph Haley, as their employees, alleging in substance that the walls of the house they were constructing were permitted and caused to fall upon his building by the negligent, careless, and imperfect manner in which they were built by the defendants, their agents and employees, and claiming damages to the amount of five thousand dollars.

The action was discontinued as to Joseph Haley in the court below, and upon the trial of the case a verdict was rendered in favor of the defendants Lawrence Diehlman and John Andrewartha, the architect, and against Robinson and Pettet, the owners of the property, and John Hehl, the contractor, for two thousand six hundred and fifty dollars. Judgment having been rendered on this verdict, they prosecute this appeal.

Robinson and Pettet in their answer deny any negligence in the construction of the work, and in a separate paragraph say that both the builder, Hehl, and the architect, Andrewartha, were competent and skillful men in their calling; that the plans and specifications were well and skillfully drawn, and the building suited for the purpose and location, and there was nothing in the erection of this building on such a lot calculated to create a nuisance; that Hehl was engaged in the occupation of builder, and the contract was made with him as an independent contractor, by which he was to complete the house, furnishing all the materials and labor for the price specified in the contract; that he took possession of the lot for that purpose, and they (the defendants) had nothing to do with the erection of the building.

A demurrer was filed to this paragraph of the answer and

sustained by the court below.   An instruction was also asked by counsel based upon facts conducing to establish the defense relied on in this paragraph of the answer, and this was refused.

It is argued by counsel for the appellee in support of the demurrer: first, that the contract filed with the answer of Robinson and Pettet does not show Hehl to have been an independent contractor; second, that if an independent contract existed, it could not relieve the owners of the property from liability on account of the injury complained of, for the reason that one in possession of fixed property must take care that it is so used and managed as not to injure others, and if controlled by either the servant or contractor the liability is the same.

We do not understand from the nature of the contract that Robinson and Pettet, or their agent Andrewartha, had unlimited control over the building, or of the contractor and his employees engaged in its construction.   The provisions of the contract authorizing the architect to employ another builder in the event the work was delayed by Hehl, and his right to superintend the work, and to give such instructions during its progress as he saw proper, and the clause preventing Hehl from subletting the work, were stipulations to protect the interest of the owners, and to guard against any negligent act of the contractor or his employees that might result in injury to others.

Such reservation of power on the part of the owners, instead of negativing the idea of an independent contract, can only be regarded as stipulations securing to the appellants a faithful compliance on the part of the builder with his undertaking.   The latter had agreed, for the sum of $20,120.00, to furnish all the materials, building stock, tools, appliances, and labor for the entire completion of the work.   The appellants, Robinson and Pettet, had no right to select any of the hands to labor on the building, or the material out of which it was

to be constructed, and the contractor (Hehl) having entered upon the work under the contract, could have disregarded the directions of the architect, pursuing that course with reference to the construction of the house that in his opinion constituted a compliance with the terms of his agreement.

In the case of Cuff, adm'r v. Newark & New York R. R. Co. (35 New Jersey, p. 19), where the contract in express terms prohibited the contractor from subletting the work, and where the engineer selected to superintend it had the right to require the contractor to discharge the hands, it was held that third parties could not take advantage of such precautionary provisions inserted in the contract for the protection of parties to it. This identical question was also raised in the cases of Blake v. Ferris (1 Selden) and Pack v. the City of New York (4 Selden), where the municipal authorities of the city of New York in making contracts for the city had similar provisions inserted, it was held in both cases that such stipulations did not in any manner affect the questions involved. In the case of Pack against the mayor, etc., Foster, the contractor, agreed " to conform the work to such further directions as should be given by the street commissioner and one of the city surveyors." In the case of Reedie v. Railway Company (4 Exch. 244) the company reserved the right of dismissing incompetent workmen, and it was held that such power of removal did not vary the case. In each of the cases referred to the defense was successfully maintained by the party sought to be made liable for an injury resulting from the negligence of others, upon the ground of an independent employment, and that the relation of master and servant, superior and subordinate, did not exist between the parties charged and the parties whose negligence caused the injury.

It is insisted by counsel for the appellee, in an able brief not wanting in authority to maintain the views advanced, that there is a marked distinction between the duties and obliga-

tions of the owners of real estate and the duties and obligations of the owners of personal estate, and that whilst the owner of real estate may not be responsible for the acts of the contractor collateral to the thing to be done, he is responsible for the damage occasioned by the thing itself.

As an illustration of this view of the question presented, it is said by counsel that the owners may not be liable for the negligence of the contractor or his servants in bringing material to or from the lot, as it may never form a part of the building, but whenever it becomes a part of the building the responsibility begins. If this be the correct doctrine the liability of the owner is made to depend alone upon the fact that he is the owner of the property, and has made the employment *sic utere tuo ut alienum non lœdas.* There is no doubt but that the owner is liable for the negligent use of his property, real or personal, by himself or servants, resulting in injury to others, and at the same time can use his property, although it may be land, "for all purposes to which lands are usually applied, without being answerable for the consequences, provided he exercises proper care and skill to prevent any unnecessary injury to the adjacent land-owner." (Shearman and Redfield on Negligence, sec. 496.)

The material inquiry in the present case is, can the owners of the land be made liable for the negligent acts of the contractor or his servants for the reason that they entered into the contract creating the independent employment, in the discharge of which by the contractor the alleged injury occurred?

There is an unbroken chain of authority in support of the doctrine that in such a contract with reference to personal property this liability would not exist; and not only so, if the appellants had made such a contract for the erection of a building on land the title and possession of which was in a third party, they could not be made to respond in damages. It therefore results that if the appellee is entitled to recover of

Robinson and Pettet, it must be because they are the owners of the lot upon which the building was erected.

Counsel for the appellee have argued this case as if the rule "that you must so use your property as not to injure others" is to be discarded in the event the party injured is denied his remedy against Robinson and Pettet. Such is not the case. This rule is recognized as sound law; but when one is attempted to be made liable for the neglect of another over whom or his servants he had no control when the wrong was committed, we can not well see how this principle is to be applied. If a legal responsibility is fixed upon the owners of the property in this case, it must be by reason of the relation of master and servant, principal and agent, for unless the doctrine of *respondeat superior* is made to apply there can be no liability on the part of one person for the negligence of another.

In Shearman & Redfield on Negligence, secs. 82, 495, it is said "that there is nothing in the nature of real property which requires that its owner should be held to a stricter liability than the owner of personal property; and he is not therefore responsible for the negligence of persons employed upon his land any further than he would be if they were employed about his chattels. Many attempts have been made to establish such a distinction and to make the owner of land responsible for the misuse of his property by contractors and their servants; and for a long time the courts gave it a certain recognition; but, on more thorough consideration, they repudiated it altogether." "The owner of real property is not liable for injuries resulting from its nature, condition, or use upon any different principle or to any greater extent than the owner of personal property."

There is no valid reason for making the distinction; and when we look to the principle upon which one can be made answerable for another's neglect, the only basis of responsibility is that of the relation of master and servant, the former

being responsible for the acts of the latter; and to incur the responsibility the master must not only have the power to select the servant or agent, but to direct the mode of executing the work, and to so control him in his acts in the course of the employment as to prevent injury to others. If this relation does not exist, no liability upon the part of one for the negligence of another can arise.

In Marmon v. Bennett (6 Exch.) Baron Parke makes the distinction by holding the owner of real estate to a higher degree of responsibility than the owner of personal property.

In the case of Reedie v. The London & Northwestern Railway Company, Rolfe, J., held that no such distinction existed unless the act complained of amounted to a nuisance; and further said that in none of the modern cases has the alleged distinction between real and personal estate been admitted.

Again, in Boswell v. Laird (8 California, 496), Field, J., delivering the opinion of the court, said "that the distinction as to the liability of a party when he engages a contractor to erect structures on his own premises and when he engages such contractor to erect them on the premises of another does not rest on any just principle. If a man, wishing to build a house for his own use on his own premises, lets it out by contract, the contractor to provide all materials and deliver it completed, upon no just principle should his liability be greater than if he undertook the building of a similar house on his neighbor's property let out in the same way."

In the case referred to the owner of the land had contracted with competent builders to erect a dam across a certain stream; the bridge to be of proper dimensions, and capable of resisting all floods; the contractor to furnish all the hands and material, and deliver it to the owner completed in a certain time. Before its completion the high water swept away the dam, causing a sudden rise, that, with the timbers, destroyed a store-house with its merchandise, located on the stream below.

It was held, in an action by the owner of the goods against the owner of the land, that the latter was not liable, because the relation of superior and subordinate did not exist between the owner and the contractor, the latter alone being responsible, there being no inherent defect in the original plan of the work.

In the case of Butler v. Hunter (7 Exch. p. 86), where the owner contracted to have one of the walls of his house taken down for an estimated price, and in taking it down the contractor, by his negligence, caused the front wall of an adjoining building to fall, it was held that the contractor and not the owner was responsible.

The case of Bush v. Steinman, decided in the year 1799 (reported in Bos. & Puller's Report, page 407), is authority for the position assumed by counsel for the appellee in this case. In that case it was held that A, the owner of the building, was liable to the plaintiff, whose carriage had been overturned by reason of a quantity of lime left in the highway by B or his servant, with whom A had contracted to repair his house for a certain sum of money, the contractor to furnish all the labor and material, and for the purposes of the work had placed the lime to be used in the repairs in the highway near the house of A.

That case has long since been overruled by the English courts, but not until it was recognized and followed by some of the courts in this country as well as in England. The reasoning of the learned judges in that case placed the liability of the owner on the true ground, if the facts authorized the conclusion. They say in the opinion that "if the owner, with a view to build or repair his house, employ his own servants, and in the execution of the work they encroach on the highway, it is clear the owner would be guilty of a nuisance, and if he contracted with a third person to do the same thing for a sum of money he would be equally guilty."

It is conceded that, if the thing contracted to be done for

Robinson, &c. v. Webb.

the owner is a nuisance, or where the prosecution of the work according to the plan must necessarily result in a nuisance, which was not the case in Bush v. Steinman, the responsibility can not be shifted on an independent contractor, for the reason that one can not shield himself from liability by contracting with a third party to do an unlawful act; but where the independent employment is lawful and the mode prescribed for doing the work safe and proper and the injury results from the negligent manner in which the work is done, the contractor alone is responsible.

The greatest trouble in these cases arises in determining whose agent or servant the party causing the injury is, and in making such an important inquiry we can only look to the contract in order to ascertain the nature of the employment. If the relation of master and servant exists, the doctrine of *respondeat superior* applies.

" He is to be deemed the master who has the superior choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details." (Shear. & Redfield on Neg., p. 83.)

Nearly all the cases relied on by counsel for appellee recognize this rule, and hold that where there is an independent employment the owner is not liable.

In the case of Deford v. The State (30 Maryland) it was held that the doctrine of *respondeat superior* does not apply where the party employed to do the work, in the course of which an injury occurs, is a contractor pursuing an independent employment; and the owner was held liable in that case on the distinct ground that the work was constructed in such a defective manner as to create a nuisance, of which fact the owner had knowledge.

In the cases of Bryan v. Fletcher (Irish and English Appeal Cases, vol. 3) and Smith v. Fletcher (7 Exch.) the act done by the engineer in the one case causing the injury resulted

alone from the contract, and in the other the injury was the act of the owner.

In the case of The City of Chicago v. Robbins (2 Black, 427), where the owner was held liable, it was adjudged that "if a nuisance necessarily occurs in the ordinary mode of doing the work, the occupant or owner is liable; but if it happened by the negligence of the contractor or his servants, the contractor, and not the owner, is responsible."

In the case of Hale v. S. E. Railway Company (6 Hine & Norman, 488) the railway company had been authorized by an act of parliament to construct a bridge for its road across a navigable stream. An independent contractor undertook its construction, resulting, when the bridge was being constructed, in obstructing navigation. Pollock, J., said that the company ought to have seen that the *specifications* and materials were such as would insure the construction of a proper and efficient bridge.

Baron Wilde in the same case said "that when the thing contracted to be done causes the mischief, and the injury can only be said to arise from the authority of the employer, because the thing contracted to be done is imperfectly performed, then the employer must be taken to have authorized the act."

It must be observed that in nearly all the cases relied on by the appellee the facts show that by the contract the thing contracted to be done was either a nuisance or must necessarily, by reason of its construction in accordance with the contract, create a nuisance or cause the injury. In the case last quoted it is evident that the original plan for building the bridge, when carried out, must necessarily have obstructed navigation. The reasoning, however, of Justice Wilde indicates clearly that he was *then* of the opinion if the original contract had been proven the company would still have been liable for the negligence of the contractor caused by any imperfection in the work. This learned judge afterward de-

livered the opinion in the case of Butler v. Hunter, already cited, in which the owner of the land was held not liable by reason of the contract creating an independent employment.

The reasoning in the case referred to (Hale v. The Railway Company) would lead to the conclusion that no contract can be made relieving the owner from liability, when the work is done upon his premises, by reason of an employment by him. If this be so, we see no reason why the rule should not be applied as well to the use of personal as real property. A doctrine of this sort, if established, would not only be opposed to the whole current of authority upon the question, but would create a rule by which there can be no limit to legal responsibility.

The owner of land in town or country makes an independent contract with a skilled and competent builder to erect his house in a proper and legitimate way, and upon a plan that if followed can result in no injury. To hold such an employer liable for the neglect of the contractor in such a case would be in direct violation of every principle of natural justice, and an entire disregard of the rule constituting the basis of all such responsibility. The owner is liable for the improper use of his land by himself or his servants; but when that use is surrendered to another for a lawful purpose, to be used in a legitimate way, and the relation of superior and subordinate does not exist, the responsibility ends.

The great weight of the modern decisions upon this question establishes the rule that where the relation of independent contractor exists as to the use of real property, and the party employed is skilled in the performance of the duty he undertakes, and the thing directed to be done is not in itself a nuisance, or will not necessarily result in a nuisance, the injury resulting not from the fact that the work is done, but from the negligent manner of doing it by the contractor or his servants, the owner can not be made to respond in damages.

The rule should be qualified by stating that where the act must necessarily result in a nuisance unless it be prevented by proper precautionary measures, the owner is bound to the exercise of such measures. As in the case of the city of Chicago v. Robbins, where the owner contracted to have a house erected fronting the street, and from the *plan of the building* it became necessary to dig an area in the street, which, when dug, was left open with no guards to protect the public from danger, it was held in an action against the owner for an injury received by reason of this neglect, or by the city against the owner — the former having been made responsible for the injury — that it was the duty of the owner to provide in such cases the proper means to prevent the nuisance. This doctrine was in effect recognized by this court in the case of Matheny v. Wolffs (2 Duvall, p. 137), Cuff v. Newark Railroad Co. (New Jersey), Storrs v. City of Utica (17 New York), Blake v. Ferris (1 Selden), Pack v. The Mayor (4 Selden), Hilliard v. Richardson (3 Gray), Corbin v. American Mills (27 Conn.), Roswell v. Laird (8 Cal.), Cower v. The Steubenville & Ind. Railroad Company (4 Ohio), Milligan v. Wedge (12 Ad. & El.), Allen v. Haywood (7 Ad. & El.); Bigelow's Leading Cases, 654; Hilliard on Torts, vol. 2, p. 542.

In this case it is admitted by the demurrer to the answer — and the facts also appear in the record — that the appellants, Robinson and Pettet, employed a competent and skillful builder; that the contract, if carried out in the ordinary manner and in accordance with the plan drawn by a competent architect, could have resulted in no injury; that the use and possession of the ground was surrendered to the builder for the purposes of the contract; that the injury was caused by the undermining of the foundation of the building by one Haley, who had been employed by Hehl, the contractor, to excavate the cellar. Upon these facts no verdict could have been sustained making Robinson & Pettet respond in damages

for the neglect of Hehl. It results therefore that the demurrer to the answer should have been overruled, and the instruction on this branch of the case asked by counsel for appellants given.

It is also urged by the appellant, Hehl, that he made the same character of contract with one Haley to excavate the cellar under this building, and that the latter secretly and wrongfully, and without his knowledge or that of his servants, undermined the foundation upon which the walls rested, causing the injury. The original answer of Hehl denied only that the injury to appellee resulted from his negligence or that of his employees; but in an amended answer he relies on the fraudulent conduct on the part of Haley, alleging that the removal of the sand beneath the depth of the foundation was secretly done by Haley, and the sand sold by the latter for his own use.

A demurrer was sustained to this amendment, and after the case had gone to the jury, or the evidence closed, the answer relying on the independent contract was offered to be filed and refused.

The facts of this case, when applied to the rights of the various appellants who are sought to be made liable for the neglect of others, illustrate the distinction between the relation of independent contractor and that of superior and subordinate. Hehl, the skillful builder, had been surrendered the use and possession of the ground by the owners in order to enable him to comply with his contract. He was in the actual possession of the premises, and engaged on the work with his hands, Haley at the same time excavating the cellar. The most important part of the duty to be performed by the builder was to have a good and substantial foundation for the structure. It required but little skill and judgment in merely digging up and removing the sand from the cellar, whilst it was certainly incumbent on the contractor to use the greatest

VOL. XI.—32

diligence, or the necessary precaution at least, to protect the foundation from being undermined in excavating the cellar. Haley could have been discharged at any time by Hehl, the latter having the actual possession and control of the building and work, and should have known, by the exercise of even the slightest diligence, that the foundation was being weakened by Haley's negligent work. Others not interested in the building anticipated the danger from the manner in which the cellar was being excavated, and Hehl's own witness and clerk testifies that he was informed of this careless and reckless act on the part of Haley. The evidence conduces to show that the greater the depth in the ground the more valuable the sand became for building purposes, and that Haley was in fact engaged in selling the sand, and some of it was purchased by Hehl, the contractor. As he removed the sand, having gone beneath the foundation, he filled the excavation with loose rubbish and dirt. This may have been done to deceive the contractor, but it clearly appears that it was so publicly done that others saw the danger who were mere lookers-on at the work as it progressed.

It is not material, however, to inquire whether Hehl, the contractor, knew of this fraudulent conduct on the part of Haley or not; the rule of *respondeat superior* applies, and he is liable for the wrongful act of his subordinate done in the course of the employment. Haley was engaged to dig the cellar, and if the excavation was deeper than authorized by the contract or the directions of Hehl, the latter is still liable for the results. "If it be done in the course of his employment the master is liable, and it makes no difference that the master did not authorize or even know of the servant's act or neglect; or even if he disapproved or forbade it, he is equally liable if the act be done in the course of his employment." (14 Howard, S. C. 486; Story on Agency, 452.)

The court therefore did not err in sustaining the demurrer

·to the first amendment, or in refusing the second amended answer to be filed.

During the progress of the trial it appeared that a portion of the books damaged and destroyed was in the possession of the appellee, under an agreement with third parties that he would sell the books and pay to them the proceeds of sale at stipulated periods, retaining a certain per cent as his profits, with the additional agreement that he was to return all the books not sold by him in good order. It was insisted by counsel for appellants that upon these facts no recovery could be had for the injury to the books so held by him. He certainly, under the contract, had the right to sell the books absolutely, and was vested with an interest to the extent of the profits; but further than this, he was liable by the express terms of the agreement to return the books unsold by him in good order, and it might well be argued that he was liable over to his principal; but whether so or not, he can maintain an action for any damage done to them whilst in his possession.

Chitty says: "A person having a special property in goods may support trover against a stranger who takes them out of his possession, as a sheriff, carrier, factor, etc., or any person who is responsible, over to his principal. So a person who has goods on the terms of sale and return may sue for any damage done to them whilst in his possession." (Chitty's Pleading, vol. 1, p. 151.)

The question as to whether the appellee intended to say in his petition that his stock of books was of the value of $1,800, or had been damaged to the amount of $1,800, is immaterial. The court placed the last construction upon it, and when an amendment was offered to cure this dubious meaning, the court declined to permit it, construing the language as counsel for the appellee had done; and besides, the verdict shows that the damage to the books was only fixed at $1,500. The petition claims damages for the loss of the use of the property and for

all expenses incurred by reason of the injury, and in the apportionment made by the jury of the cost of removal and the loss of time incurred in the removal.

As between the appellee, who occupied one part of the building, and the firm of Webb & Breeding, occupying another part, we can not say that the allowance to Webb was for too much. There is no error in the record prejudicial to the appellant Hehl. The judgment being joint, it must be reversed as to both, and the cause is now remanded, with directions to the court below to grant the appellants, Robinson and Pettet, a new trial, and to render a judgment on the verdict against the appellant Hehl, and for further proceedings not inconsistent with this opinion.