## Employers Indemnity Company of Philadelphia v. Kelly Coal Company.

(Decided October 9, 1912.)

### Appeal from Bell Circuit Court

1. Master and Servant—Question of Relationship—Question One of Fact—Evidence.—Whether or not the relation of master and servant exists in a given case, is a question of fact, or of mixed law and fact, and is to be proved, as any other like question; and, any evidence tending to prove or disprove the relationship is admissible, its weight and sufficiency being left to the jury, under instructions of the court.

2. Master and Servant—Test as to Relationship.—The real test by which to determine whether a person is acting as the servant of another, is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders, or misconduct.

3. Master and Servant—Mode of Payment.—Where a mining company employed R. to mine coal at a given price per ton, and R. employed C. to assist him, and the mining company, as an accommodation to R., paid C's. wages out of R's. money, the mode of payment did not make C. an employe of the mining company within the meaning of an employer's liability policy which insured the mining company against damage caused by injury to its employes.

4. Master and Servant—Mode of Payment Not Decisive of Relationship.—The mode of payment is a circumstance in solving the question whether the relation of master and servant exists, but it is not decisive of that question.

BRUCE & BULLITT for appellant.

R. T. IRVINE and METCALF & JEFFRIES for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant, the Employers Indemnity Company of Philadelphia, insured the appellee, the Kelly Coal Company, against claims for damages arising out of injuries to its employes, to the extent of $1,500.00 Carmichael was injured in the mine of the Kelly Coal Company; and having made a claim against that company for damages on account of the injury, the coal company notified the Indemnity Company of Carmichael's claim against it, and called upon the Indemnity Company to defend the action. The Indemnity Company refused,

however, to defend, on the ground that Carmichael was not an employe of the coal company at the time of the accident, and his claim was not, therefore, covered by the policy. The coal company compromised the claim by 'paying Carmichael $2,000.00; and having called upon the Indemnity Company to reimburse it, and it having failed to do so, the Kelly Coal Company brought this action to recover $1,500.00, the maximum liability under the policy, and $300.00 expended by it as attorney's fee in making the settlement. The Indemnity Company makes no question of the propriety or reasonableness of the settlement with Carmichael; but in the first paragraph of its answer it traversed all the material allegations of the petition which set up Carmichael's employment by the coal company; and, in a second paragraph it alleged affirmatively as follows:

"Further answering herein defendant says that prior to the injury to R. L. Carmichael, referred to in the petition, plaintiff, the Kelly Coal Company, had entered into a contract with one Ramsey under and by which said Ramsey had undertaken to mine all the coal in a certain section of plaintiff's mine at a fixed price per ton and to deliver the same at the tipple. In the course of the prosecution of this work, and in order to enable him to perform it, said Ramsey employed the said Carmichael and others to work for him in the performance of his said contract with plaintiff. In order to assist the said Ramsey in carrying out said contract, plaintiff agreed with him to advance and pay to the employes of said Ramsey, including the said R. L. Carmichael, the amounts severally due them from him from time to time, and it was agreed and understood between plaintiff and said Ramsey that at the end of each month the amounts which plaintiff had thus paid to his employes should be charged by plaintiff to said Ramsey and deducted from the amount due from plaintiff to him under his contract with plaintiff. This agreement between plaintiff and said Ramsey was carried out according to its terms; and in this way, and in no other, did plaintiff make payments to said Carmichael, for work, done by him for Ramsey, as aforesaid, and it then charged said payments to said Ramsey and deducted same from the compensation which otherwise would have been due from plaintiff to said Ramsey, under his said contract. There

was no other connection between plaintiff and said R. L. Carmichael than as herein set forth.''

The circuit court sustained a demurrer to the answer as a whole; and, the Indemnity Company having stood by its answer, and declined to further plead, the court gave judgment against it for $1,800.00, in accordance with the prayer of the petition. From that judgment the Indemnity Company prosecutes this appeal.

It is conceded that if Carmichael was not embraced within the meaning of the term ''employe'' as used in the contract of insurance, appellant was not liable. The only question, therefore, presented for review is this: Did the second paragraph of the answer state facts which showed Carmichael to be an employe of the Kelly Coal Company at the time of the injury? The petition alleged that Carmichael was an employe of the Kelly Coal Company, and that his wages were included in that company's pay-roll, which was the agreed basis for fixing the premium upon the policy. The purpose of the allegation that Carmichael's wages were included in the coal company's pay-roll was to show a state of facts that would present the relation of master and servant between Carmichael and the coal company, and consequently show Carmichael to be an employe of the coal company and within the terms of the policy. But, these allegations of the petition having been denied by appellant, they cannot be considered in testing the sufficiency of either the second paragraph of the answer, or the answer as a whole. The only question is, did the fact shown by the second paragraph of the answer, that the Kelly Coal Company paid Carmicheal's wages for Ramsey, by whom Carmichael was employed, make Carmichael an employe of the Kelly Coal Company and thus bring him within the terms of the insurance policy? The decision of the circuit court was necessarily rested upon the idea that that fact did make Carmichael an employe of the Kelly Coal Company.

Appellee relies principally upon the two cases of Dives v. Fidelity & Casualty Company of New York, 206 Pa. St., 200, and Indiana Iron Company v. Cray, 19 Ind. App., 565, to support the judgment of the trial court. We have examined the opinions in those cases carefully, and fail to find that they should have any controlling influence in the decision of this case. Dives v. Fidelity & Casualty Company is not in point, because the premium

paid for the policy, in that case, was based upon an esti-mated pay-roll which included the wages paid by the subcontractor to the injured workman. In commenting upon that fact the court said:

"From this it is clear that the defendant company it-self defined the persons who were to be regarded as 'em-ployes' under the terms of the policy, for the clause can-not be read otherwise than that any person whose wages were included in the estimtaed wages set forth in the schedule, was, for the purposes of the protection in-tended by the policy to be considered as an 'employe' of the insured, no matter what may be the strict and literal meaning of the word when standing alone."

It will be seen that the decision, in that case, was rested upon the controlling fact that the wages of the injured workman were embraced in the wages upon which the premium was estimated, and that by that act the parties necessarily brought the injured workman within the meaning of the term "employe" as used in the policy. But, in the case at bar, that allegation of the petition is expressly denied. The decision in the Dives case is, therefore, radically different, in principle, from the case at bar, and has no application to it.

Neither is the opinion in Indiana Iron Company v. Cray, supra, any more helpful in the decision of this case, since the jury, in that case, expressly found that Cray was in the employment of the defendant company, and was working for it when he was injured. To make that decision an authority for the determination of this case, it would have to be shown here that Carmichael was in the employment of, and working for, the Kelly Coal Company when he was injured—a fact which is expressly denied by the answer, and which denial must be taken as true for the purposes of the demurrer.

In 26 Cyc., 971, it is said:

"Whether or not the relation of master and servant exists in a given case is a question of fact, or of mixed law and fact, and is to be proved, as any other like ques-tion. Generally speaking, any evidence tending to prove or disprove the relationship is admissible, its weight and sufficiency being left to the jury under instructions of the court."

Speaking generally, the relation may be said to exist whenever the employer retains the right to direct not only what shall be done, but how it shall be done. Robin-

son v. Webb, 11 Bush, 464; Central Coal & Iron Company v. Grider's Admr., 115 Ky., 755; Jahn's Admr. v. W. H. McKnight & Company, 117 Ky., 661. The significant element in the relation of an employe and his employer, is personal service.

In Wood on Master and Servant, section 317, it is said:

"The real test by which to determine whether a person is acting as a servant of another, is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct."

In other words, an "employe" is one who works for and under the control of his employer. The mode of payment is a circumstance in solving the question whether the relation of master and servant exists, but it is not decisive of that question.

In Corbin v. American Mills, 27 Conn., 274, it was held the manner of paying for the work or thing done, whether by the day or job, though a circumstance to be considered, is not a criterion for determining whether the "employe" is a contractor or a servant—that the real test is, whether or not the person employed is acting for or in place of his employer, and in his absence in accordance with and representing the latter's will, and not his own.

It was error, therefore, for the circuit court to hold, as it did, that the fact that the Kelly Coal Company paid Carmichael's wages merely for the purpose of assisting Ramsey who had employed Carmichael, made Carmichael an employe of the Kelly Coal Company. The answer made an issue upon the question of the company's employment of Carmichael; and the further statements that Ramsey employed Carmichael, and that the company merely paid his wages out of Ramsey's money, and as an accommodation to Ramsey, did not, by virtue of the terms used, change the issue made by the traverse, or make Carmichael an employe of the Kelly Coal Company. The question of appellant's liability should have been submitted to the jury, under proper instructions giving the law as to what constitutes an "employe."

Judgment reversed and cause remanded for further proceedings.