## Jessie's Adm'x v. Gulf Refining Co. et al.

(Decided June 21, 1938.)

(As Modified on Denial of Rehearing Nov. 15, 1938.)

534

JOHN T. DIEDERICH, JOHN STANLEY, A. R. IMES and JOHN M. THEOBALD for appellant.

CALDWELL & GRAY, R. T. KENNARD, LITTLETON & JARVIS, and BATSON & CARY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Effie Jessie, administratrix of George D. Jessie, deceased, is appealing from a judgment of the Carter circuit court entered pursuant to a directed verdict dismissing her petition against the Gulf Refining Company, hereinafter referred to as the company, and N. S. Qualls, whereby she sought to recover damages for the death of her husband alleged to have been caused by the negligence of appellees.

As appears from the record the company owned a building and gasoline distributing plant in Olive Hill. The building was approximately 30 by 40 feet with walls about 10 feet in height. The walls consisted of studding solidly covered with sheathing or shiplap, the exterior of which was covered with galvanized iron. There was a gabled roof with a slight pitch which was of practically the same construction as the walls. There was a small office room in one corner of the building with a door leading to a loading platform outside and one leading

into the wareroom. The walls of the office consisted of studding covered with ceiling and the room was ceiled in like manner overhead. There were large storage tanks outside the building and three pipes from these tanks ran into the building, these pipes being equipped with faucets which permitted gasoline and kerosene to be drawn from them. One of the pipes led from a tank containing Ethyl gas, another from a tank containing gulf gas and the other from a kerosene tank.

Appellee, Qualls, had entered into a contract with the company to handle and distribute its products from this plant. He was also engaged in the mercantile business which required practically all of his time. He had had no experience in distributing gasoline, oil, etc., and employed appellant's decedent to take charge of the plant and look after the business. Mr. Jessie had had several years' experience in handling and distributing gasoline and oil, having worked in the same plant three or four years previous to his employment by Qualls. Early in the morning of January 20, 1935, Mr. Jessie went to work and was seen to go into the office where he built a fire in a stove. He then went out and parked a gasoline truck near the loading platform and re-entered the office. Shortly after he re-entered the office a terrific explosion occurred which practically demolished the front of the building and set it on fire. Firemen or other persons who went to the scene found the body of Mr. Jessie near the wall of the warehouse room opposite the office. Apparently, he had been killed immediately by the explosion.

It was alleged in the petition in substance that Mr. Jessie was employed by appellees and that they were negligent in the construction, operation, inspection and use of the storeroom in that they caused pipes connected with large gasoline tanks to be brought through the walls into the building and to be equipped with faucets and valves whereby gasoline could be taken therefrom within the storage room; that the building was so constructed as to confine the fumes arising from the gasoline withdrawn from the pipes and exposed to the air; that such unsafe and dangerous condition existed for a long time; that they were not properly inspected or kept in repair and that because of the unsafe condition, gasoline and fumes from the gasoline would and did accumulate in the building and came in contact with the fire in the office stove and thereby caused the

explosion resulting in the death of Mr. Jessie; that appellees permitted the pipes in the room which led from the gasoline tanks to become leaky or defective and thereby permitted gasoline to evaporate and volatize into the air, forming an explosive mixture; that such conditions were known to appellees or could have been known to them by the exercise of ordinary care but were unknown to appellant's intestate.

By separate answer, each of appellees made a general denial of the allegations of the petition and in separate paragraphs pleaded contributory negligence and assumed risk upon the part of appellant's decedent. By still another paragraph the company admitted that it owned the building but had turned same over to appellee, Qualls, for the handling and distribution of its products under its contract with him but alleged in substance and effect that he was not an employee of the company but was an independent dealer or contractor and that Jessie was his employee and not an employee of the company.

By reply appellant traversed the affirmative allegations of the answers and affirmatively pleaded that at all times mentioned in the pleadings and long prior thereto, appellees in the operation of the distributing plant employed three or more persons and therefore came within the provisions of the Workmen's Compensation Law, Kentucky Statutes, section 4880 et seq., and that because of such failure the defense of contributory negligence and assumption of risk were not available and could not be relied upon by them in this action. By a rejoinder and agreed order the affirmative matter in the replies was controverted.

In addition to the facts hereinbefore recited it appears in evidence that an employee of the company whose duty it was to inspect buildings and plants owned by it, occasionally visited and inspected this plant; that Mr. Jessie had full charge and control of the distributing plant and the business, and it was his duty to repair or cause necessary repairs to be made and that he usually did so but some times reported such matters to Mr. Qualls and had him send plumbers and workers to remedy defects; that Mr. Jessie knew the danger of having flames or fire near gasoline and that he forbade persons who were smoking to come into the wareroom and had ordered some such persons out of the room, although

at times when Mr. Qualls was not about the plant, he himself was given to smoking in and about the wareroom. There is evidence indicating that it is a dangerous practice to expose gasoline to the air in buildings constructed as this one was and that buildings equipped for drawing gasoline on the inside would not be regarded as coming up to the most approved standards of safety. A number of experts who had made long study of the question as well as witnesses who had had long experience in the handling of gasoline testified to its highly volatile and combustible nature; that when exposed to air it readily vaporizes and the vapor being much heavier than the air acts much in the same way as water does, that is, if an open vessel is partially filled with gasoline a vapor begins to arise on the top and unless disturbed by air currents arises with the level as does water and when it reaches the top overflows the sides and spreads out over lower levels.

A young son of Mr. Jessie who was with him at the plant the afternoon before the explosion testified that he was in the wareroom several times that afternoon and at one time observed a leak or a drip from the faucet of one of the gasoline pipes and indicated that there was a large spot on the floor where the gasoline dripped. He further testified that there was a zinc tub sitting in the wareroom which was about half full of gasoline. One or two other witnesses testified to having previously seen drippings from the gasoline faucets inside the building but there is no evidence to indicate whether it was from a leak or was drippings from the faucet following the drawing of gasoline.

The case has been ably as well as elaborately briefed by counsel for appellant and counsel for each of appellees. It is argued by appellee company that Mr. Qualls who employed appellant's decedent was an independent contractor and the relation of master and servant did not exist between him and the company nor between the company and his employee.

The evidence is very persuasive, if indeed not conclusive, that Qualls was an independent contractor and the relation of master and servant did not exist between him and the company; and that Jessie was an employee of Qualls and not of the company and therefore the relation of master and servant did not exist between Jessie and the company. However, in the proven circum-

stances, we do not deem it necessary to determine that question, since, if such relationship did exist between the company and Jessie, and for reasons pleaded by appellant, the defenses of contributory negligence and assumed risk were not, under section 4960, Kentucky Statutes, available to the company, the burden in such or any event was upon appellant to show some act of negligence upon the part of the company to which the injuries resulting in the death of her husband were due (Gibraltar Coal Mining Company v. Collins, 237 Ky. 765, 36 S. W. (2d) 372) and this she signally failed to do.

There is no evidence to show any causal relation between any alleged negligent act or omission upon the part of the company and the accident which resulted in the death of Mr. Jessie. If there was an explosion of gasoline vapors, and the evidence clearly indicates there was, the vapors did not arise from gasoline being drawn in the building but from gasoline caused and permitted by Mr. Jessie to remain exposed to air in the building, a condition for which the company was not responsible. For the same reason and regardless of the relation that might have existed between the parties, Qualls also would not be liable. If, however, Qualls was an independent contractor, the evidence shows that he did not come within the provisions of the Workmen's Compensation Law, Kentucky Statutes, section 4880 et seq., and therefore the defenses of contributory negligence and assumed risk, which were clearly established by evidence, were available to him. It follows therefore that the court did not err in peremptorily instructing the jury to find for appellees.

Judgment affirmed.

The whole Court sitting.