# Barnes et al. v. Indian Refining Co. et al.

June 23, 1939.

Hubert Meredith, Attorney General, A. E. Funk and Jesse K. Lewis, Assistant Attorneys General, Robert E. Hatton and Robert B. Hensley for appellants.

James T. Nielsen, Leslie W. Morris, Percy N. Booth and Alexander G. Booth for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Franklin

Circuit Court sitting in equity. Appellee Indian Refining Company (hereinafter called the company) brought this suit against the Unemployment Compensation Commission and its members (hereinafter called the Commission) and also against its co-appellee, Frank J. Kolb, who operates bulk stations for the handling of the company's petroleum products, on consignment, at Paducah and Mayfield. The company asked for a declaration of its rights under the Unemployment Compensation Laws (Kentucky Statutes, 1939 Supplement, Section 4748g-1 et seq.; Acts of 1936, 4th Extraordinary Session, Chapter 7, as continued and replaced by Acts of 1938, Chapter 50) and that it be adjudged that Kolb was not its employee but was an independent contractor. The chancellor overruled a demurrer to the petition. The Board declined to plead further and judgment was entered in conformity with the prayer of the petition. This appeal followed.

The question for decision narrows down to whether or not Mr. Kolb is an employee of the company within the meaning of the Unemployment Compensation Law. Mr. Kolb is a resident of Paducah, and has entered into two consignment agreements with the company. He filed an answer joining in the prayer of the petition and asking that it be adjudged that the company was not his employer or the employer of his employees. The plant at Paducah is owned by the company, but the plant at Mayfield has been built entirely by Kolb. He uses his own trucks and machinery and none of the equipment used by him in operating the plants is owned by the company. It is alleged that Mr. Kolb devotes about ten per cent. of his time to the business of distributing petroleum products under his consignment agreements with the company. The remainder of his time is devoted to the operation of a wholesale drug business at Paducah. He employs managers to operate the bulk plants who give their entire time to this work. He employs about six men to assist him at the Paducah plant and two men at the Mayfield plant. It appears that he has made regular reports to the Commission and paid taxes under the act for the years 1937 and 1938. He carries his own workmen's compensation insurance and his own liability insurance covering not only the work done in selling petroleum products but also his other business activities. The company has nothing to do with the number or personnel of his employees.

The consignment agreement between the company and Mr. Kolb is quite lengthy and we shall not undertake here to do more than sketch its substance. It provides that the consignee shall diligently market the consignor's petroleum products and account for the consignor's monies, etc.; sell for cash or on authorized credit. He shall not sell for less than the authorized prices, nor enter into any secret agreement with a customer or competitor to reduce prices; shall bear all expenses in the operation of the plant, including the expense of furnishing trucks and other equipment conforming to consignor's standards. He shall hire and pay the wages of all assistants and employees required for the operation of the plant and distribution of the products; and assume full control over and responsibility for the acts of his assistants and employees. He must furnish a bond for the faithful accounting of all money and other property, and shall not assign the agreement without the written consent of the consignor. He is entitled to the commissions fixed in the contract and the contract shall continue in force until terminated by either party on five days' written notice. Title to the products covered by the contract remains in the consignor until sold, and, in the event of termination, the consignee shall not engage in the business of selling or distributing petroleum products within a given territory for five years.

No question of the validity of the Unemployment Compensation Law is presented. We are asked simply to determine whether or not the consignment contract brings the company within its limits. It is hardly necessary to point out that the question is not free from doubt. This very appeal bespeaks the faith of the Commission in its own construction of the Law. We must follow settled principles to solve the problem to the best of our ability.

The Unemployment Compensation Law is a taxing statute. Steward Machine Company v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293; Helvering v. Davis, 301 U. S. 619, 57 S. Ct. 904, 81 L. Ed. 1307, 109 A. L. R. 1319; Texas Company v. Wheeless, Miss., 187 So. 880, 888. The Law itself provides that "This Act shall be liberally construed to accomplish the purposes thereof." Section 4748g-21. However, there is an obvious difference between construing the Act with liberality and extending its operation to persons not within its letter. It is for the legislature to fix

the limits within which the law shall operate and we can not "liberalize" its operations to one not within its metes and bounds. To do so would be to legislate ourselves.

As a taxing statute, the limitations of the Act are to be strictly interpreted. The rule is well stated by Lord Cairns in Partington v. Attorney General, L. R. 4 H. L. 100, 122, as quoted in Rice v. United States, 8 Cir., 53 F. 910, 912:

> "If the person sought to be taxed comes within the letter of the law, he must be taxed, however great the hardship may appear to the judicial mind to be. On the other hand, if the crown, seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is free, however apparently within the spirit of the law the case might otherwise appear to be."

The legislature alone can say who shall be taxed and howsoever liberal may be the interpretation of the Act we can no more apply it to appellee if it is not within its terms than we can say that it should apply to employers of three persons when the legislature has said that it should apply to employers of four or more persons. Accepting this principle, therefore, we examine the pertinent provisions of the Act.

Contributions under the Unemployment Compensation Law are exacted (Section 4748g-7) from each "subject employer" with respect to "wages" payable for "covered employment."

Under Section 4748g-3, a "subject employer," so far as pertinent to this case, is defined as, any "employing unit" which in each of three calendar quarters in the preceding calendar year had in "covered employment" four or more workers.

"Wages" means all remuneration payable for services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash—excluding gratuities and tips.

"Covered employment" means service performed for wages or under contract of hire in which the relationship of the individual performing such services and the employing unit for which such services are rendered is, as to those services, the legal relationship of employer and employee.

An "employing unit" means any individual or type of organization which has one or more workers performing services for it within this State. Workers employed by such employing unit which has two or more separate establishments in the State are deemed to be employed by a single employing unit under the Act.

The foregoing definitions are not quoted in full from the Act but are paraphrased to eliminate so much of them as is not here relevant. Substantially, however, we may say that contributions are payable by each individual or organization (having four or more workers in this State) which in each of three calendar quarters in the preceding calendar year had services performed for remuneration or under contract of hire, in which the relationship of the individual performing such services and the individual or organization aforesaid for which such services are rendered is, as to those services, the legal relationship of employer and employee.

It is argued for the Commission that the employment referred to in the Act is broader in its scope than the ordinary master and servant relationship. We are unable to agree to this contention. We must assume that the legislature used terms in their ordinary sense and that it meant what it said with reference to the "legal relationship of employer and employee." It is difficult to conjecture language more explicit.

In Texas Company v. Wheeless, supra, the Supreme Court of Mississippi had the same question before it that is presented here. The court said [187 So. 883]:

"The case is solvable on the legal meaning of that term 'contract of hire,' as used in the Act. A man hired to labor is employed, but a man may be employed in a work who is not hired. To 'employ' is a word of more enlarged significance than the word to 'hire.' Black's Law Dictionary, 2d Ed., Page 572. However, in the statute now before us, the Legislature saw fit to say under the sub-head of Definitions of terms, that the employment contemplated was 'service * * * performed for wages or under any contract of hire' instead of contract of employment. From the whole context we think it clear that the service which was to be performed for wages in the ordinary sense was to be under a contract of hire, and that if the compensation was to be paid in salaries or commissions it was like-

wise to be payable for services rendered under a contract of hire. But for the purpose of this decision we need not give to the term 'contract of hire' a technical legal meaning, as distinguished from a contract of employment, but shall assume, as we should, that the Legislature used the words 'Employer' and 'Employee' in their usual and ordinary sense, and that this was done with a view of giving effect to the declared public policy contained in the Act, for the relief of unemployment, as hereinbefore set forth; and, from this premise, determine whether the consignees and their helpers were employees of the appellant in the ordinary sense in which the term is commonly used in the decided cases.''

The court proceeded to resolve the question of the liability of the oil company under the common law rules of master and servant.

The Commission, however, seeks to avoid the application of the Mississippi case because the Mississippi Unemployment Compensation Law defined wages as ''compensation for personal services'' while our act defines them as ''compensation for services.''

Certainly the legislature could not have contemplated that services by a corporation would be deemed to be within the purview of the Act and yet it appears that the company has at least one of its bulk stations now operated by a corporation under a contract similar to Mr. Kolb's. The omission of the word ''personal'' from the Kentucky Act seems to us to be without significance. The Mississippi court attached no particular weight to the word in concluding that the Texas Company was not within the Act and we see no reason for doing so either.

We are necessarily brought to the conclusion that ''the legal relationship of employer and employee'' means what it says and that the words are synonymous with the legal concept of master and servant. Compare Employers' Indemnity Company v. Kelly Coal Company, 149 Ky. 712, 149 S. W. 992, 41 L. R. A., N. S., 963. Any other construction would lead us into the purest speculation uninvited by the plain terms of the Act itself. We will not seek to read indefiniteness into that which is definite or vagueness into that which is clear. In Robinson v. Baltimore & Ohio Railroad Company, 237 U. S. 84, 35 S. Ct. 491, 494, 59 L. Ed. 849, the Supreme

Court was confronted with the construction of the Federal Employers' Liability Act, 45 U. S. C. A., Sections 51-59. The Court, through Mr. Justice Hughes, said:

"We are of the opinion that Congress used the words 'employee' and 'employed' in the statute in their natural sense, and intended to describe the conventional relation of employer and employee."

The Federal Employers' Liability Act was, in its inception, no less advanced and remedial than the present Act. We see no differenece in principle between the situation presented in Robinson v. Baltimore & Ohio Railroad Company, supra, and the question now before us.

The Commission relies upon a number of administrative rulings and decisions of courts under statutes different from our own to a greater or less degree. In view of our conclusion, however, that the Legislature did not contemplate a broader classification than that of the common law concept of master and servant, it is unnecessary to review these adjudications of foreign courts or boards. Our own decisions are conclusive of the matter.

In Jessie's Adm'x v. Gulf Refining Company, 275 Ky. 533, 121 S. W. (2d) 909, 911, a contract, between one Qualls and the Gulf Refining Company, substantially like the one before us was involved. We did not find it necessary to determine the exact question but the opinion states that "the evidence is very persuasive, if indeed not conclusive, that Qualls was an independent contractor."

In Ruth Brothers v. Stambaugh's Adm'r, 275 Ky. 677, 122 S. W. (2d) 501, 505, another independent contractor case, we said:

"The main question in all cases of this type is whether or not the one who is claimed to be an independent contractor has contracted to do the work according to his own methods and without being subject to the control of his employer except as to the result of his work." See, also, American Savings Life Insurance Company v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Raponi v. Consolidation Coal Company, 224 Ky. 167, 5 S. W. (2d) 1043; Wright v. Wilkins, 222 Ky. 144, 300 S. W. 342; Diamond Block Coal Company v. Sparks, 209 Ky. 73, 272 S.

W. 31; Hewitt Lumber Company v. Mills, 193 Ky. 443, 236 S. W. 949.

Whether or not the facts of a particular situation give rise to the relationship of servant or of independent contractor to the one for whom an individual is acting must, of course, to some extent be a matter of degree. See, Restatement of the Law of Agency, Section 220. The chief criterion in all the cases, however, seems to be the right to control methods of work rather than mere results.

In the contract between the company and Mr. Kolb we find no right to control details or methods of procedure. The contract is directed toward results and not how they are obtained. There is no proof of any modification of this agreement, but, on the contrary, the petition alleges facts indicating that no control of methods exists and that Mr. Kolb is to all intents and purposes an entrepreneur, free to manage his business as he sees fit.

He is responsible to the company for results, but, except to the extent that an interest in the results may influence methods of operation, the company does not control the details of his operation or have a right to exercise any control thereof.

The Commission insists that the policy of the Act and its efficient administration require that it be applied to situations such as that now before us. These are questions which may properly be addressed to the legislature, and no doubt were. They have no place here. We are concerned simply with a determination of which side of the line to place this consignment contract. Once it is concluded that the words ''employer'' and ''employee'' are to be accorded their natural sense, no doubt of the fact that the Act was not intended to apply to the appellees can well be entertained. It follows that the trial court did not err in overruling the demurrer to the petition.

Judgment affirmed.

Whole Court sitting.