## Kentucky State Liquors, Inc. v. Commonwealth ex rel. Unemployment Compensation Commission.

September 30, 1949.

Chat Chancellor and Morris Weintraub for appellant.

Samuel Cole, Unemployment Compensation Commission, for appellee.

JUDGE THOMAS—Affirming.

A number of years prior to October 29, 1944, A. L. Sandner was engaged in operating a retail liquor busines in Newport, Campbell County, Kentucky. On that date he sold and transferred his entire business, good will and all assets, to the appellant, Kentucky State Liquors, Inc.

The business of Sandner was operated in a manner to make him subject to the unemployment tax prescribed in Chapter 341 of KRS, but he had never made any report to the Unemployment Compensation Commission of that fact and consequently it had no record of that fact and, of course, no record of the amount that he owed as such taxpayer.

Chapter 377 of the same statute is what is known as the Kentucky Bulk Sales Statute, and its section 377.020 requires the seller under such sale to furnish to the buyer "a written verified statement of all of the creditors of the vendor together with their addresses and the amount of the indebtedness due and to become due to each of the creditors," etc. Sandner made that statement and delivered it to appellant at the time of the sale, but he did not include the amount of the tax due

by him as an employer subject to the tax, which was $954.65 with penalties and interest as prescribed by Chapter 341 of KRS.

Subsequent to the making of the sale Sandner died and later this action was filed to recover from appellant the amount of the tax, penalties and interest due from Sandner, the seller, to the Commonwealth of Kentucky for the benefit of the Unemployment Compensation Commission.

The defense was that defendant, notwithstanding Sandner had not furnished it the certificate of his indebtedness required by the Bulk Sales Statute, made inquiry of the Unemployment Compensation Commission as to the amount of the tax due from Sandner under Chapter 341 of KRS. He received the information that Sandner had never made any report of his liability or the facts measuring the amount thereof, required of him by the statute. Defendant further alleged as a defense that inasmuch as Sandner had never furnished the proper information to the Unemployment Compensation Commission, and it accordingly had made no entry of an account against him, it was not liable for the tax. In other words, defendant contends that in order to make him liable under the Bulk Sales Statute, as well as under Chapter 341 of the Unemployment Compensation Commission act, it was necessary that an employer's reserve account should be set up by the Unemployment Compensation Commission and entered on its records. The court determined otherwise and rendered judgment against appellant according to the prayer of the petition, from which it prosecutes this appeal.

In the cases of Barnes v. Indian Refining Co., 280 Ky. 811, 134 S. W. 2d 620; Unemployment Compensation Commission v. Savage, 283 Ky. 301, 140 S. W. 2d 1073, and Oppenheimer v. Commonwealth, 305 Ky. 147, 202 S. W. 2d 373, 374, we held that the contributions exacted from an employer described in Chapter 341 is a tax levied for the public policy purpose described therein, and being a tax it was a debt or an obligation which the act imposed on a purchaser of the entire business of the seller to the extent of the value of the stock purchased. It is not contended in this case that the value of the property purchased by appellant was insufficient to pay the debts reported by the seller under the bulk

Sales Act plus penalties and interest herein sought to be recovered.

The facts in the Oppenheimer case, as appear from the opinion, are exactly parallel to those appearing in this case with the one exception that it does not disclose whether or not an employer's reserve account had been opened by the seller in the manner contended for by appellant herein. Counsel, however, states in brief that an examination of the record in that case shows that such account had been opened with the Unemployment Compensation Commission as prescribed by the act and that the seller was delinquent in the payment thereof to the extent sought to be recovered in that case.

In that case. it is said: "The appellant, M. S. Oppenheimer, purchased all the assets of Do Nut Restaurant No. 2, Incorporated, and they were transferred to him on June 30, 1944. He continued to operate the business in the same place, with substantially the same employees. By reason thereof he became a 'subject employer.' KRS 341.250, 341.540. It developed that Do Nut Restaurant No. 2, Inc., then owed taxes or contributions to its reserve account for the year 1943 and the first half of 1944, amounting to $1,375.32. It does not appear in the record when this fact was ascertained."

No doubt the reason for that statement is that Chapter 341 ipso facto created the account against all employers coming within its provisions the same as an ad valorem tax creates an obligation of the owner of the property taxed to pay it, regardless of whether it has theretofore been assessed. The statute makes the purchaser liable for all such taxes due from the owner of the stock purchased, the payment of which are delinquent at the time of the sale. It requires the operator of the business subject to the tax to make a report thereof to the proper authorities, but there is nothing in it to show or intimate that if he fails to make such report the purchaser is excused from or relieved of its payment. In .this case the entire tax is delinquent notwithstanding it has not been reported. The cases cited—as well as the fundamental principles relating to public taxation—declare the tax to be a debt or obligation of the one who is required to pay it, and the appellant as shown by the excerpt supra from the Oppenheimer case was compelled to take notice of that principle of the law.

The appellant admits its knowledge of the liability of Sandner for such tax because it made inquiry of the Unemployment Compensation Commission as to whether any such liability had been reported by him, thereby indicating to plaintiff that the business conducted by the seller made the operator liable under that act for some amount based upon the calculating rules prescribed therein.

We therefore conclude that the court correctly interpreted the statute so as to render appellant liable for the amount of the judgment rendered against it.

Wherefore, the judgment is affirmed.