**J. D. HACKER, Appellant,**

v.

**Ora HACKER et al., d/b/a Hacker Coal Company, et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 14, 1956.

Calvert C. Little, London, for appellant.

James Sampson, William Rice, Harlan, for appellees.

CULLEN, Commissioner.

J. D. Hacker was injured when a truck tire he was changing blew out, causing the lock rim to strike him in the head. He sought workmen's compensation from the Hacker Coal Company, a partnership engaged in operating a coal mine. The Workmen's Compensation Board denied recovery, upon a finding that Hacker was an independent contractor rather than an employe. On appeal to the circuit court the ruling of the board was upheld. Appealing to this Court, Hacker maintains that the evidence before the board required a finding that he was an employe.

Hacker was engaged in hauling coal, by truck, from the company's mine in Leslie County to a railroad loading ramp in Clay County. He furnished his own truck, which he drove himself, and paid all of the operating expenses of the truck. He was paid on a tonnage basis, and was not required to haul any specific number of loads or to work a designated period of hours. No deductions were made from his compensation for Social Security contributions or income taxes.

The foregoing facts, as concerns the relationship between the coal company and the trucker, are substantially identical with those in Sigmon Ikerd Co. v. Napier, Ky., 297 S.W.2d 917 in which this Court sustained the finding of the Workmen's Compensation Board that the trucker was an independent contractor. However, Hacker points to certain additional "facts" here which, he says, show that the company had power to control the details of the work to such an extent as to make the relationship one of employer and employe.

The additional "facts" are: (1) The company had refused to contract with Hacker unless he agreed not to haul coal for any other mine; (2) Hacker and the other truckers often were required to load their

trucks at night; (3) all of the truckers were required to shovel up coal that spilled during the loading operation; (4) the truckers understood that the company had the right to control the details of their work; (5) the term "hired" was used by some of the witnesses in referring to Hacker's relationship with the company; (6) the company had a rule against carrying passengers in the trucks, and Hacker was "fired" because he violated this rule and because he had been involved in several accidents with his truck. We will consider these items in numerical order.

(1) The company partners denied this, and denied ever having made any contractual arrangement with J. D. Hacker. They claimed they had dealt only with Cecil Hacker, the appellant's brother. So there was a conflict of evidence on this point.

(2) The mine often operated at night, and it was necessary for the tipple to be emptied in order to accommodate the output of the mine. As we view it, the question of whether the mine operated in the daytime or at night was a basic operational matter, and not one involving control over the details of the work. The company simply advised the truckers that its coal would be ready for hauling at night. Hacker was not *required* to haul at night, or any other time. He could haul at his own election any time when the coal was available.

■ (3) The fact that the truckers were required to shovel up the spilled coal does not mean necessarily that the company was exercising the power of control over the details of the work. It may be considered that the truckers had contracted to perform the job of moving the coal from the tipple to the ramp, under the contractual requirement that the tipple premises be kept clean of spilled coal. The mere fact that shoveling the spilled coal involved *manual* labor does not of itself preclude an independent contractor relationship.

■ (4) While the truckers testified as to their understanding that the company had the right to control all details of the work, the company partners said *they* had no such understanding and they did not attempt to control the details. The right of control, as a determining factor of the nature of the relationship between the parties, must be found in mutual understanding or agreement. Under the conflicting evidence a finding was warranted that there was no such mutual understanding.

■ (5) We believe that no signficance can be attached to the use of the word "hired" in the testimony, because it was not used in such a way as to throw any real light on the actual relationship between the parties.

■ (6) As concerns the rule against carrying passengers in the trucks, it is somewhat difficult to say whether this was in the category of a condition of the contract, or was evidence of the right of the company to exercise control over the details of the work. It appears that the truckers were informed of the rule at the beginning of their relationship with the company, and thus it could be considered a part of the contract. The company did not attempt to exert any right of control over the speed of the trucks, the route traveled, the number of trips made per day, the amount to be hauled on each load, or any other detail. We believe that the mere fact that the company chose to exercise control over one detail, at the outset of the relationship, does not require a conclusion that the company had the right to control all details as the work continued.

■ The fact that the company gave, as one of its reasons for terminating its relation with Hacker, that he had been involved in several accidents, need mean no more than that the company did not desire to continue contractual relations with a person whose ability to perform his contract was impaired by frequent accidents. As concerns control, the company could not very well exercise control over whether or not a trucker would have accidents.

In view of the conflict in the evidence as to some of the details of the relationship between Hacker and the coal company, we think the question of whether Hacker was an employe or an independent contractor was one of fact, and that there was sufficient evidence to sustain the finding of the Workmen's Compensation Board that he was an independent contractor.

The judgment is affirmed.

MONTGOMERY, J., not sitting.