Mrs. Ervin STURGILL et al., d/b/a S. & A. Coal Company, Appellants,

v.

V. E. BARNES et al., Members Comprising the Kentucky Unemployment Insurance Commission, Appellees.

Court of Appeals of Kentucky.

March 29, 1957.

Hazelrigg & Cox and R. Vincent Goodlett, Frankfort, for appellants.

Paul E. Tierney, Dept. of Economic Security, Frankfort, for appellees.

CULLEN, Commissioner.

By an order of the Kentucky Unemployment Insurance Commission, unemployment taxes in the amount of $3,027.50, plus interest and penalties, were assessed against Mrs. Ervin Sturgill and Mrs. Melvin Adams, doing business as S. & A. Coal Company. The assessment was based upon a finding that four groups of coal miners, with whom the coal company had mining contracts in 1950 and 1951, were actually employes of the coal company, rather than independent contractors as the company contended. Upon appeal to the circuit court the commissioner's order was affirmed. The company has appealed from the circuit court judgment.

The only issue is whether the miners were improperly held to be employes rather than independent contractors.

In its order, the commission summarized the facts as follows:

"The S. & A. Coal Company owns certain coal rights and certain capital mining equipment consisting of steel rails, mine cars, power cutting machines and ponies. It entered into four separate oral agreements with Henry Adams and Leonard Combs, dba Combs and Caudill Coal Company, Leonard Addington and Joe Pease, dba A. & W. Coal Company, Harvey Taylor and Junior and Joe Pease, dba Taylor and Pease Coal Company, and with Farris and James Pease and Raleigh Day, dba Pease

and Day Coal Company. Under the terms of these agreements each company was to mine and place in loading bins near the mouth of the respective mines merchantable coal for which S. & A. was to pay to each company $2.10 per ton for coal so placed. When the loading bins became full, an agent of S. & A. would place a no-work sign on the bin signifying that no more coal was to be placed in the bin. S. & A. reseved the right to enter the four mines to inspect the capital equipment. Each agreement was terminable at will by either party.

"Each of the companies, which are styled as partnerships, furnished at its own expense its hand tools and feed for the ponies. Each maintained and repaired, without compensation, the capital equipment, however S. & A. furnished the required parts for such repair. Each furnished its own bookkeeper, reported and paid its respective income taxes (however, these returns were filed as individuals and not as partnerships), and Social Security. Each had a separate contract with the United Mine Workers Union and union dues were paid by the individuals. Since the premium for Workmen's Compensation is rather high for such small employing units, the S. & A. Coal Company included these companies in its policy and deducted ten cents per ton to cover the cost.

"During the period in question, the Combs and Caudill Coal Company added a new member and the Taylor and Pease Coal Company hired workers by the hour. Neither of these actions was subject to approval by the S. & A. Coal Company. The members of the respective companies were free to work at their convenience and on occasions did not work even though the loading bin was not full. When the bin was full and the no-work sign was up, they could and did engage in some incidental work around the mines

such as picking slate, for which no compensation was paid. At the end of each week, S. & A. Coal Company paid each of the four companies for the coal each had loaded in the bins that week. The bookkeeper of each respective company then distributed that amount among the members of each company according to the number of hours each one had worked that week."

Omitted from the summary are the following additional facts:

(1) Without any control by S. & A., each partnership determined what area within its mine would be worked at any given time and whether a given portion would be worked at all.

(2) S. & A. could and did reject dirty or unmerchantable coal after it had been placed in the loading chute. The partnership received no payment for such rejected coal.

(3) Slate, rock and unmerchantable coal had to be removed from the mine and disposed of by each partnership at its own expense and at times determined by it.

(4) Each partnership furnished, at its own expense, the powder, fuses, fuse boxes and fuse caps used in its mining operations.

(5) The loading chute or bin at the mouth of each mine would hold approximately thirty tons of coal. Limited only by the capacity of the bins, each partnership determined for itself, without any control by S. & A., whether it would operate its mine on any given date, the hours it would work and what persons would do the work.

■ The alleged fact, included in the commission's summary, that when the loading bins became full an agent of the coal company would place a no-work sign on the bin, amounting to a stop-work order, has no support in the record. It appears that the commission based its finding of this fact on an informal report from one

of its field agents, which report was not produced at the hearing or placed in evidence. Clearly, the commission had no right to consider this report or to base a finding upon it. See 42 Amer.Jur., Public Administrative Law, sec. 130, pp. 464, 465.

■ The commission's order indicates that the commission attached considerable significance to the alleged no-work sign. However, we do not consider it to be of much importance, in view of the undisputed and obvious fact that when the loading bin was full the miners could place no more coal in it and necessarily had to stop producing coal. The full bin would of itself constitute a no-work sign.

Since the controlling facts are not substantially in dispute, we consider the question of whether the miners were employes or independent contractors as being one of law rather than of fact. Cf. Hacker v. Hacker, Ky., 296 S.W.2d 713.

■ In Barnes v. Indian Refining Company, 280 Ky. 811, 134 S.W.2d 620, this Court held that in cases arising under the Unemployment Compensation Act, Ky. St.Supp.1939, § 4748–1 et seq. the question of whether a person is an employe or an independent contractor is to be determined under the common law rules of master and servant. It well may be that to apply, in unemployment compensation cases, rules or criteria designed historically to determine questions of tort liability, will achieve results not entirely in harmony with the purposes and spirit of the unemployment compensation law. The very person whom the law is designed to protect may be compelled, by the same economic factors which prompted the enactment of the law, to enter into a contractual relationship that takes him out of the protection of the law. However, as indicated in the Indian Refining Company case, the policy of the law addresses itself to the legislature, and if that body desires that the question of who constitutes an employe under the unemployment compensa-

tion law shall be determined by rules and standards other than those of the common law, it must so provide.

■ A number of criteria are recognized for use in determining whether a person rendering services is an employe or an independent contractor. See Ambrosius Industries v. Adams, Ky., 293 S.W.2d 230; Restatement of the Law of Agency, sec. 220. However, the chief criterion is the right to control the details of the work. Barnes v. Indian Refining Company, 280 Ky. 811, 134 S.W.2d 620; Shedd Brown Mfg. Co. v. Tichenor, Ky., 257 S.W.2d 894; Turner v. Lewis, Ky., 282 S.W.2d 624.

In the case before us, the facts do not show any right of control by the coal company over the details of the work. The miners were not required to produce any specific quantity of coal; they were free not to work whenever they chose; they had sole choice as to the part of the mine in which they would work; they performed their work without supervision or direction; and were responsible to the coal company only for results. The fact that they could not work when the bin became full was a limitation imposed by the physical facilities of the mine, rather than a control exercised by the coal company.

In a recent case involving somewhat similar facts, we held that an independent contractor relationship existed. Turner v. Lewis, Ky., 282 S.W.2d 624. Also, in two cases involving persons hauling coal by trucks from a mine to a ramp, where, in converse to the instant case, the trucks could not operate when the mine tipple was empty, we held that the truckers were independent contractors. Sigmon Ikerd Co. v. Napier, Ky., 297 S.W.2d 917; Hacker v. Hacker, Ky., 296 S.W.2d 713.

It is a simple fact that the miners here enjoyed a freedom of activity in their labors not common to the master-servant relationship. Accordingly, the coal company should not be subjected to the burdens that attach to an employer.

It is our opinion that the commission and the circuit court erred in holding the coal company to be an employer.

The judgment is reversed, with directions that judgment be entered setting aside the order of the commission and voiding the assessment of tax.