SANDFORD, &c.
vs.
McARTHUR, &c.
TUCKER, &c.
vs.
SAME.

---

## Sandford, &c., vs. McArthur, &c.

## Tucker, &c., vs. Same.

### APPEAL FROM CAMPBELL CIRCUIT.

Case 47.

ORD. PET.

1. As a general rule, an agent who exceeds his powers becomes personally responsible to those with whom he deals.
2. Those who deal with the servants or officers of a corporation created by statute, are bound to take notice of the powers conferred by the act of incorporation; not so in ordinary cases, where the power of the agent is known only to himself and his principal.
3. It is the duty of those who deal with the officers of a bank to know the extent of the power conferred by the charter under which the bank acts. This is the general rule, and as a general rule a party cannot complain of want of knowledge of that of which he is bound to take notice.

CASE STATED

This suit was brought by Sanford, who held a large amount in notes purporting to be notes of the Newport safety fund bank of Kentucky, all of less denomination than five dollars, against McArthur, who was, during its existence, the President of the bank. A judgment was asked against McArthur individually for the amount of said notes.

As appears by the charter of the bank, as originally passed by the legislature, all notes to be issued

SANDFORD, &c.,
vs.
McARTHUR, &c.
TUCKER, &c.
vs.
SAME.

thereby were to be printed and engraved by the auditor of the state, and to be secured by the deposit of stocks or mortgages on real estate. Said notes were to be numbered and registered by the auditor, and countersigned by him before they were delivered to the president of the bank. By an amendment to the charter notes of a less denomination than five dollars were authorized to be issued without being countersigned by the auditor; this alone was dispensed with, all other provisions of the original charter remained unchanged by the amendment. Sanford, in his petition, charges that under color of this amendment of the charter the president, McArthur, confederated with others, some of whom were directors, and caused to be issued large amounts of notes of various denominations under five dollars, which were not received from the auditor, nor printed, nor engraved, nor numbered, nor registered, by him, and for the security of which no stocks, nor bonds, nor mortgages deposited with the auditor, but that McArthur, &c., caused said notes to be printed and engraved, and then issued as the notes of said bank, well knowing at the same time that such an issue was unauthorized, and in violation of the charter, and that this act was a fraud upon the persons to whom said notes were delivered, and of all others into whose hands they might come. It is alleged that the said notes were made payable to bearer, and on their face contained the promise of said bank to pay the same. They were received and passed in the community as legal notes, and being thus put upon the public they ultimately came, for a valuable consideration, into the hands of the plaintiff.

To this petition the defendant demurred, and assigned the following as causes of demurrer: 1. That the court had no jurisdiction of the case. 2. That there was a deficit of parties defendant. 3. That the petition shows no cause of action. The court overruled the demurrer as to the first and second

grounds, but sustained it as to the third, and judgment was rendered for the defendant.

On a subsequent day of the term the judgment was set aside, and the plaintiff offered an amended petition, in substance averring that the notes so issued by the defendant purport to be the notes of said bank, but were not issued by the said bank, and were not the bills or notes of said bank; that they were made and passed by said defendant as a circulating medium, in lieu of and as the representative of money; but were not the notes or bills of any legally incorporated banking institution.

The defendant objected to the filing of the amendment. The court rejected the amendment, and rendered judgment in bar of the action. The plaintiff prayed an appeal.

*Stevenson & Kinkead*, for appellant—

Argued—1. That the circuit court erred in sustaining the demurrer on the third ground set out in the demurrer.

It is not pretended that the notes of less denomination than five dollars were legally issued, but were put in circulation without any authority from the charter. This conclusion is warranted by the reasoning of this court in the case of *Watson vs The Newport Safety Fund Bank of Kentucky*, delivered in December, 1856, in which case this court decided that the bonds and mortgages deposited with the auditor must be applied to the redemption of the large notes. The conclusion follows that the corporation is not liable for these small notes. Who then is responsible for their redemption? They were issued by the authority of the defendant, the President of the bank, we insist that he is responsible for the spurious notes thus put upon the public by his act and sanction.

2. The argument that those dealing with the corporation—a chartered institution—were bound to take notice of the powers of its officers and agents

SANDFORD, &c.,
*vs.*
McARTHUR, &c.
TUCKER, &c.,
*vs.*
SAME.

SANDFORD, &c.,  cannot be sustained, nor can it excuse the defendant.
*vs.*
MCARTHUR, &c.  These notes not having on their face the signature of
TUCKER, &c.,  the register, the defendant, in sending them forth be-
*vs.*
SAME.  came himself guarantor of their value as represent-
ed on their face.  It cannot be supposed that if it
had been announced to those who received those
small notes at the time of their issue, that there was
no such security as that contemplated by the original
charter, that they would have been received.  The
defendant well knew that the issue of these notes
was without authority, and that those who received
them supposed they were issued by authority, and that
the bank was bound to redeem them.  The receivers
were deceived, and the defendant knew it, and fail-
ed to undeceive them, acting in bad faith.  Surely
he cannot escape from the consequences of such a
fraud.  (2 *Kent's Com.* 482; 1 *Story's Eq. sec.* 208.)
Kent says: (2 *vol. Com.* 482,) "as a general rule each
' party is bound to communicate to the other his
' knowledge of material facts, provided he knows the
' other to be ignorant of them, and they be not open
' and naked, or equally within the reach of his ob-
' servation."  (21 *Eng. Com. Law Rep.* 211; 1 *Met-
calfe*, 6; 20 *Eng. Law and Eq. Rep.* 136; 1 *Curtis C.
C. R.* 256; 13 *John.* 224; 16 *Wendell*, 646; 1 *Metcalfe*,
151; *Tapp vs Lee*, 3 *Bos. and Pul.* 271; 3 *Adol. & El-
lis, N. Series*, 66; 43 *Eng. Com. Law Rep.* 633; 7
*Gratton*, 368.)  The only requisite to sustain the ac-
tion is fraud and injury to the plaintiff.  (13 *Howard*,
211; 8 *Johnson*, 23; *Ib.* 403; 2 *Eng. Com. Law Rep.*
64; 7 *Bingh*; 3 *Barn. & Adolphus.* 23; 23 *Eng. Com.*
38; 1 *Metcalfe*, 207; 3 *Ib.* 469; 13 *Ib.* 343; 13 *Ran-
dolph*, 410; 6 *Cowen*, 352; 7 *Wendell*, 22; 24 *Ib.* 347.)

3. It is is not admitted that the receiver of this
paper was bound to notice what was the provisions
of the charter of the Newport Safety Fund Bank of
Kentucky.  It was a private act, incorporating a pri-
vate company.  All are presumed to know the gen-
eral law; no one is presumed to know what the pri-
vate act contains, except those who procure them,

and act under them. (*Kent's Com.* 2 *vol.* 275; *Angel & Ames*; 1 *Monroe*, 4; 1 *Marshall*, 369; 6 *Dana*, 142.) The provision of the *Revised Statutes* 452, dispenses with the necessity of pleading an act of incorporation. This is a change of the common law only in respect to the necessity of pleading such acts, but in no way implying that every one is bound to know the provisions of private acts of incorporation.

The first taker of the notes receiving them as good they remain good in the hands-of every one into whose hands they may come in their circulation.

If the agent of a corporation made a contract beyond his authority, he is individually bound in the same manner as the agent of a natural person would be. (See *Angel and Ames*, sec. 303; *Salem Bank vs. Glaucester Bank*, 17 *Mass. Rep.* 28; *Johnson vs. Bentley*, 16 *Ohio Rep.* 97; *Lee vs. Trustees of Flemingsburg*, 7 *Dana*, 29; 25 *Alabama Rep.* 566.)

McArthur, the defendant, professed to issue these notes by authority of the bank, and he is a warrantor thereof. (See 1 *Dana*, 612; 8 *B. Monroe*, 401.) They were payable to bearer, and each holder has the right to enforce the undertaking; the implied waranty follows the notes into the hands of each holder.

4. The amended petition is intended to state a cause of action under the *Rev. Stat. page* 277, which makes it penal to circulate as a medium any thing representing money, unless it be the note of some banking institution legally incorporated in the United States.

*J. R. Hallam* for appellee—

The sole question arising on the demurrer is the sufficiency of the petition; does it show any cause of action. It is not sought to charge the defendant as upon his own notes, although it is inadvertently stated in the petition that the defendant signed the notes, yet his name is not on the face of the notes, or else-

SANDFORD, &c.,
*vs.*
McARTHUR, &c.
TUCKER, &c.,
*vs.*
SAME.

SANDFORD, &c.,
vs.
McARTHUR, &c.
TUCKER, &c.,
vs.
SAME.

where on them. The object of the suit is to render the defendant personally liable for acts done as agent of the bank, upon the ground that he exceeded his authority, and fraudulently put the notes in circulation.

Before an agent can be charged individually for an act done as agent, it must clearly appear that he exceeded his authority, and that the extent of authority was concealed, or was unknown to the party with whom he dealt. If the party with whom the agent deals, has the means of knowing the extent of the agents authority, the agent cannot be held liable individually, where the act is done in the name of the principal; for, "it is a general rule, standing on firm 'foundations, and pervading every system of juris- 'prudence, that where an agent is duly constituted, ' and names his principal, and contracts in his name, ' the principal is responsible and not the agent." (2 *Kent's Com.* 269, 30.) The inquiry in all cases is, to whom was the credit, in the contemplation of the parties, intended to be given. In ordinary cases of private individuals the principal is liable to third persons for the frauds, torts, misfeasances, negligencies, and defaults of the agent, even though the conduct of the agent was without his participation consent or knowledge, provided the breach or want of duty arose in the course of his employment (*Paley on Agency by Lloyd*, 297, 307; *Story on Agency*, 465.)

The rule of law is undoubted, that whenever a party undertakes to do an act as agent for another, if he does not possess any authority, or if he exceeds his authority, he will be personally responsible to the person with whom he deals, but there are exceptions to the rule, and one exception is thus stated by *Justice Story*, "This doctrine, however, as to the ' liability of the agent when he contracts in the name ' and for the benefit of the principal, without having ' due authority, is founded upon the supposition that ' the want of authority is unknown to the other party, ' or if known that the agent undertakes to guaranty

' a ratification of the act by the principal." (2 *Kent*, 631; *American Jurist, No.* 5, 71.)

If the allegation of the plaintiff's petition is true, that defendant confederated with others, it must have been with the officers of the bank, who were principals, and he then had their authority; so the rule applicable to cases where there is want of authority does not apply.

The plaintiff, and all others dealing with the bank, were bound to know the extent of the authority of those conducting the institution, and ignorance cannot avail them; and though the officers claimed the authority to issue such notes, it was nevertheless the duty of others to determine that question for themselves. It is no where averred that the bank did not authorize the issue of those notes, on the contrary there is good ground for the inference that the issue was authorized by the bank, and it was willing to the extent of its means to redeem them, and did redeem them until its means were exhausted. The plaintiff received the notes upon the credit of the bank alone, and not upon the credit of the president, and therefore is not entitled to recover of defendant.

The dealing being with the principal, through the agent, the doctrine *respondeat superior*, which always applies in civil suits, for the frauds, deceits, concealments, misrepresentations, torts, negligencies, and other malfeasancies or misfeasancies of agents in the course of their employment, although, the principal did not authorize, justify, or even know of such conduct, or even forbade or disapproved of them, must prevail in the decision of this case. (*Story on Agency,* 465; *Lane vs. Colton,* 12 *Mod. Rep.* 490; *Paley on Agency, by Lloyd,* 294 to 307; 4 *Bacon's Abr., Master and Servant; K. Hern vs. Nichols,* 1 *Salk.* 289.)

There was no dealings whatever between the plaintiff and defendant, and the position assumed that any right of action, if any ever existed, passed with the possession of these notes to every holder

SANDFORD, &c.,
vs.
McARTHUR, &c.
TUCKER, &c,
vs.
SAME.

VOL. XVIII.        27

SANDFORD, &c., *vs.* McARTHUR, &c. TUCKER, &c., *vs.* SAME.

from time to time, and is now in the plaintiff, is a position wholly untenable. (*Drake vs. Johnson, Hard.* 223; *Jones vs. Wood,* 3 *Marshall,* 163; *Stevenson vs. Sharer,* 3 *J. J. Marshall,* 548; are analagous cases.)

The receiver of the notes from the bank, who was bound to know the power of the bank to issue them, became a participator in their illegal issue, and therefore has no claims upon the court for relief, even if he was now the plaintiff, and this plaintiff can have no greater claims on the court. This court, in *Downs vs. Quarles, Litt. Sel. Cases,* 491, said, in substance, that when two unite in an illegal contract the court of law or chancery would help neither out of the difficulty, but leave them where they placed themselves by their illegal act.

The court had no jurisdiction in this case, under the amended petition. Each note, if illegally issued, and the penalty attached, it attached to the issue of each separate note, and the plaintiff cannot join together the illeged issue of several notes to give jurisdiction.

The conclusion must be that the circuit court did not err in the judgment sustaining the demurrer, or in rejecting the amended petition.

*Geo. B. Hodge* on the same side—

1. Did the circuit court err in sustaining the demurrer of appellee to appellants petition? The petition charges that the appellee being president of the Safety Fund Bank, caused the notes to be issued of a less denomination than five dollars, in violation of the charter, and that they were signed by said McArthur as president of the bank. An examination of the notes filed as exhibits shows this to be a mistake; and the allegation that they issued in violation of the charter shows no good cause of action. McArthur can only be responsible as a principal or as an agent in a civil suit. The whole character of the petition precludes the idea that he is a principal. It is then only as an agent, who has made himself in-

dividually liable, that he can be charged with the re-
demption of these small notes. As whose agent is
he to be charged? Of the stockholders, certainly,
who own the bank. And if so, the petition should
charge that the defendant caused the notes to be is-
sued without authority of the stockholders. If the
defendant has violated the law he may be responsi-
ble to the commonwealth, but proof of that fact alone
will not authorize a recovery in this action. Take
it for granted that this defendant did exceed his au-
thority, and that it is so alledged, which is not true in
fact. It is believed to be a well settled principle of
law that an agent can never be made personally re-
sponsible, unless he has, by some concealment of facts
peculiarly within his own knowledge, or by misrep-
resentation, induced credit to be given which he
could not obtain had his authority been fairly made
known. Such is the doctrine of *Paley on Agency, page*
336, 370. See also *Bowen vs. Morris*, 2 *Taunt.* 374.
When an agent enters into a contract for his princi-
pal, and names his principal, the principal is respons-
ible, and not the agent. (*Russell on Factors and Bro-
kers*, 255–6; *Ib.* 294.)

If a party make a contract as agent, *bona fide* be-
lieving that he has authority, but has not such au-
thority in fact, he may be personally responsible.
(*Ib.* 295.)

"A factor or broker will not be liable to third par-
' ties on contracts, in making which he has exceeded
' his authority, unless he has either been guilty of
' some fraud, or has made some statement in refer-
' ence to the extent of his authority which he knew
' to be false, or has stated as truth something which
' he did not know to be true, omitting at the same
' time to give such information to the other contract-
' ing party as would have enabled him equally, with
' himself, to judge as to the authority under which he
' proposed to act." (*Ib.* 295, 6.)

The public was bound to take notice of the corpo-
rate powers conferred by charter upon the Newport

SANDFORD, &c.,
*vs.*
McARTHUR, &c.
TUCKER, &c.
*vs.*
SAME.

Safety Fund Bank; and though the signature of the auditor to the notes under five dollars was dispensed with by the amended charter, they were still to be registered, still to be numbered, still to be stamped "secured by state stock and real estate." The petition charged that the notes exhibited were not so registered, numbered, or stamped. This was noticed in connection with the statute, that such notes were not the legitimate issue of the bank—the maxim *caveat emptor* applied. The information the bank had was in possession of him who received the notes at the bank upon their issual.

If then the receiver of these notes was possessed of all the powers of the corporation, in respect to the issue of such notes, the receiver stands equally guilty as the bank in the illegal circulation of a prohibited currency, and the law will not aid him in his effort to relieve himself from the consequences of his illegal act. (*Safford vs Wykoff*, 1 *Hill, page* 12.)

The plaintiff does not make out a cause of action, and especially one which the court of law or chancery will regard with favor.

Oct. 13, 1857.    Judge SIMPSON delivered the opinion of the court.

It is not alleged in these cases that the plaintiffs themselves have had any dealings with the defendants or that they received from them the notes which they hold, or that they were deceived with respect to the value of these notes by any misrepresentations or concealment on the part of the defendants. Neither do they allege that they received them in consequence of any inducements held out by the defendants, or any promises made by them that they would be liable for them. They may be regarded, therefore, as having received them as the notes of the corporation, which they purported to be, looking to it for their payment, and relying upon its liability for the amount of them.

The only question, therefore, that arises upon this state of case is, has the board of directors made

themselves personally liable for these notes to the holders thereof, by exceeding the authority which the charter conferred upon them, in issuing and putting them into circulation as the notes of the corporation, it having been heretofore decided by this court, in the case of *Watson vs The Bank*, that they were issued without authority?

The Directors are the agents of the corporation, and derive their powers not from the corporators but from the charter, and cannot bind their principal beyond it. The charter did not authorize them to issue the notes held by the plaintiffs, nor is the corporation bound for them as its notes, although we suppose that it is liable for the amount of them so far as it received, and used any of the benefits or profits derived from them. The holders may have a right to look to the general assets of the corporation, although they have no claim upon the fund set apart for the redemption of those notes which were issued in the manner prescribed by the charter.

It is a general principle, that where a person undertakes to do an act as an agent of another, and exceeds the authority delegated to him, he will be personally responsible therefor to the person with whom he is dealing; but this liability is founded upon the supposition, that the want of authority is unknown to the other party.

A distinction has been taken between acts of an agent for his principal in common cases, and similar acts done by the servants or officers of a corporation. In the first case it is said the extent of the authority is known only between the principal and agent, whereas, in the latter the authority is created by statute, to which all may have access who deal with the officers. (*Salem Bank vs Gloucester Bank*, 17 *Mass. Rep.* 29; *Angel & Ames on Corporations*, sec. 299.)

According to this doctrine it was the duty of those dealing with the officers of the corporation to know the extent of their powers, and to know whether the notes held by the plaintiffs were legally or illegally

---

SANDFORD, &c.
*vs.*
McARTHUR, &c.
TUCKER, &c.
*vs.*
SAME.

1. As a general rule, an agent who exceeds his powers becomes personally responsible to those with whom he deals.

2. Those who deal with the servants or officers of a corporation created by statute, are bound to take notice of the powers conferred by the act of incorporation; not so in ordinary cases, where the power of the agent is known only to himself and his principal.

SANDFORD, &C.,
*vs.*
McARTHUR, &C.
TUCKER, &C.,
*vs.*
SAME.

put into circulation. If they received them, knowing that they had been issued without authority, they cannot hold the officers personally responsible for them, inasmuch as the liability of the agent is founded upon the want of knowledge by the other party that he has exceeded his authority. The notes not having been stamped "secured by the pledge of state bonds and real estate," as required by the charter, carried on their face intrinsic evidence of the fact that they had not been lawfully issued, evidence which was visible to all persons, and which all persons receiving them were bound to notice.

3. It is the duty of those who deal with the officers of a bank to know the extent of the power conferred by the charter under which the bank acts. This is the general rule, and as a general rule a party can not complain of want of knowledge of that of which he is bound to take notice.

Is the position correct, that it is the duty of those who deal with the officers of a bank to know the extent of the power conferred upon them by the charter under which they profess to act? We think it is as a general proposition. Although such corporations are private, yet as their notes are intended for general circulation, and the acts by which they are created are made public, and are of general interest, they do not properly fall under the denomination of private statutes, but must be classed with those that are general and public, or at least they should be considered as *quasi* public acts. The public, therefore, is as much bound to take notice of their provisions as they are to know the provisions of any of the statutes passed by the legislature.

It is a general rule that a party cannot rely upon his own ignorance of such matters, as it was his duty to know, and which he could have known by the use of reasonable diligence. If, for instance, an agent should refer the party with whom he was dealing to a recorded power of attorney as showing the extent of his authority, the latter could not hold the former liable on the ground that he had exceeded his authority in contracting in the name of his principal.

Here the charter containing the powers under which the officers acted was published, and made

accessible to all persons. Ignorance of its provisions must, according to well settled legal principles, be considered willful and inexcusable. Knowledge of them discharges the officers from all liability for having exceeded their authority, and as no other ground of liability is made out by the plaintiffs their action cannot be maintained according to the well settled principles of law by which such cases are governed.

It might, as a matter of public policy, be right to hold the officers of a corporation personally responsible whenever they transcended the powers conferred upon them by their charter, to the injury of the public. But, if such a liability be proper, it should be imposed by the terms of the charter, or by some general statute alike applicable to all corporations.

The defendants may have made themselves responsible to those persons with whom they had immediate dealings, if they were guilty of any fraudulent misrepresentations or concealments, but not being liable on the ground of a mere excess of authority, and the plaintiffs not having had any dealings with them, have not made out any valid cause of action against them.

Wherefore, the judgments are affirmed.